TRADE BANK OF NEW YORK, Plaintiff, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.

Supreme Court, New York County, March, 1927.

Insurance — indemnity bond — action on indemnity bond issued to plaintiff whereby defendant agreed to indemnify plaintiff against loss through robbery, larceny, burglary or theft — third party opened account by depositing check for $5,300 — depositor knew check to be forged — subsequently plaintiff's teller cashed check for $3,365.40 in belief that original check had been paid — depositor was guilty of forgery and larceny — larceny rather than forgery was cause of plaintiff's loss — defendant is liable on its bond — payment of money was not " delivery " of property — extension of credit not shown.

This is an action upon an indemnity bond issued to plaintiff by defendant under the terms of which defendant agreed to indemnify plaintiff against loss or damage not exceeding $50,000 " through robbery, larceny (whether common-law or statutory), burglary, theft * * *." The bond by its terms did not cover " any loss directly or indirectly effected by means of forgery, unless the forgery be committed by or with the collusion of one or more of the employees " or " any loss through larceny or theft committed by any person, not an employee, to whom any employee shall have, otherwise than through dishonesty, delivered property or extended credit." It appears that a third party opened an account with plaintiff shortly before, depositing with it a check for $5,300, which check was known by said third party to have been forged. Subsequently a check for $3,365.40 was drawn against the account to the order of cash and

**372** Trade Bank of N. Y. *v.* U. S. Fidelity & Guaranty Co.

Supreme Court, March, 1927. [Vol. 132

payment thereof was procured over plaintiff's counter, its teller cashing the check in the belief that the $5,300 check had then been paid.

Since said depositor knew the check to have been forged, he was guilty of forgery, and when, with full knowledge of the worthlessness of the check, he presented his check for $3,365.40 to plaintiff for payment and received said amount in cash he was guilty of statutory larceny. But the forgery was not the cause of plaintiff's loss; rather a separate, wrongful act, the larceny, was the cause of plaintiff's loss, and consequently the provision of defendant's bond exempting it from liability in the event of forgery does not relieve it from liability.

The payment of money to the depositor by plaintiff was not a delivery of property to him under the provisions of the bond, since " to deliver " is to pass something from one person to another, to place something in the legal possession of another. A manual transition of property, induced by fraud and deceit, where it is evident no transfer would have been made, had the truth been known, is not in common speech deemed a delivery.

The clause exempting defendant from liability through larceny or theft committed by any person not an employee would be destructive of the primary coverage of the bond in the event the word " delivery " were to be construed as exempting defendant from liability where there was any turning over of property to a third person.

Nor was there any extension of credit given the depositor within the meaning of the bond.

ACTION upon indemnity bond issued to plaintiff bank.

————— ———, for the plaintiff.

————— ———, for the defendant.

CALLAHAN, J. This action is brought upon an indemnity bond issued to the plaintiff bank by the defendant insurance company, under the terms of which defendant agreed to indemnify plaintiff against any loss or damage which it might sustain, to an amount not exceeding $50,000, " through robbery, larceny (whether common-law or statutory), burglary, theft, * * * whether effected with or without violence, or with or without negligence on the part of any of the employees, while the property is actually within any of the insured's offices covered hereunder. * * * " The bond, by its terms, did not cover " any loss directly or indirectly effected by means of forgery, unless the forgery be committed by or with the collusion of one or more of the employees," and also " any loss through larceny or theft committed by any person, not an employee, to whom any employee shall have, otherwise than through dishonesty, delivered property or extended credit."

The facts are conceded. One Gold, who had opened an account with plaintiff shortly before, deposited with it a check for $5,300, purported to be signed by the Florida Fruit and Produce Company, which check Gold knew to be forged, in that the maker was a fictitious person. Subsequently Gold drew a check in the sum of $3,365.40 against his said account in the plaintiff bank to the

order of cash, and procured payment thereof over the counter; the plaintiff's teller cashing the same in the belief that the $5,300 check had then been paid.   Gold, though nominally having a balance in excess of the amount for which his check was drawn, in fact had no actual balance to the credit of his account.   Gold, knowing that the check for $5,300 was forged, was guilty of forgery when he deposited the same with the plaintiff for collection and credit to his account.   And subsequently, when he, with full knowledge of the worthlessness of the check and that he was not entitled to draw on the plaintiff for the amount thereof, or any part of the said sum, presented his check for $3,365.40 to the plaintiff for payment and received said amount in cash, he was guilty of statutory larceny.

The crime comes within the purview of section 1293 of the Penal Law, as well as of section 1290, subdivision 1, which subdivision describes the old crime of obtaining goods by false pretenses as it existed prior to the adoption of the Penal Code in 1881.   The crime is now included under the term " larceny," which also includes the crime described in section 1293.   (*People* v. *Huggins*, 110 App. Div. 613, 615.)   The forgery of Gold was not the cause of plaintiff's loss.   Though the uttering of the forged instrument made possible the commission of the subsequent crime of larceny, it did not directly or indirectly cause the loss.   A separate, independent, wrongful act, the larceny above described, was the cause of plaintiff's loss, and hence the provision of defendant's bond exempting it from liability in the event of forgery, does not relieve it from liability. At any event, the rule is settled in the law of insurance that the cause nearest the loss is to be considered; that distant causes are to be disregarded.   (*Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47.)

Nor was the payment of the money to Gold by the plaintiff a delivery of property to him under the provisions of the bond.   " To deliver " is to pass something from one person to another; to place something in the legal possession of another.   (Standard Dict.) A manual transition of property, induced by fraud and deceit, where it is evident no transfer would have been made, had the truth been known, is not, in common thought and common speech, deemed a delivery.   Property is not delivered to one who secures possession thereof by trick and artifice.   The holder of property so secured is but a naked possessor, without color of right.   In legal effect it is a taking by, as distinguished from a delivery to, the wrongdoer. That " delivered " should receive the construction above given is borne out by a consideration of the terms of the bond.   Its coverage is: " (a) Against any dishonest act of any of plaintiff's employees, wherever committed and whether committed directly or by collusion with others; (b) through robbery, larceny (whether

common-law or statutory), burglary, theft, holdup, misplacement, or destruction, whether effected with or without violence, or with or without negligence on the part of the employees, while the property is actually within any of the insured's offices covered hereunder.   *   *   * "

It is thus clear that the intent and purpose of the policy is to cover against all losses sustained through dishonesty of plaintiff's employees, and also against any losses sustained through the robbery, larceny, etc., of third persons.  The clause exempting defendant from liability through larceny or theft, committed by any person not an employee, to whom any employee shall have, otherwise than through dishonesty, delivered property, would be practically destructive of the primary coverage given by subdivision (b), above described, in the event the word " delivered " were to be construed as exempting defendant from liability, where there was any turning over of possession of property to a third person, for, in such event, any property handed to the criminal, whether through deception or force, would be a delivery to him, and hence make largely ineffective the primary coverage against loss through the various crimes specified.

Neither was there any extension of credit to Gold by plaintiff. The conceded facts show that the money was paid over to him by plaintiff's teller, solely upon the belief that the forged check theretofore deposited by Gold was genuine and had been paid.  I am of the opinion that plaintiff's loss is within the terms of the policy, and direct a verdict for the plaintiff for the sum of $3,800, inclusive of interest.  An exception may be noted to the defendant, with thirty days' stay of execution; sixty days to make a case.